1   Ben F. Pierce Gore (SBN 128515)
    PRATT & ASSOCIATES
2   1871 The Alameda
    Suite 425
3   San Jose, CA 95126
    (408) 429-6506
4   pgore@prattattorneys.com

5   Charles Barrett
    CHARLES BARRETT, P.C.
6   6518 Highway 100
    Suite 210
7   Nashville, TN 37205
    (615) 515-3393
8   charles@cfbfirm.com

9   *Attorneys for Plaintiff*

10

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13                   SAN JOSE DIVISION

14

15   MARIANNA BELLI, individually and on       Case No. 5:14-cv-00283
     behalf of all others similarly situated,
16                                             Related to:  12-cv-02272 (PSG)
                 Plaintiff,
17
     v.
18                                             **CLASS ACTION AND
                                               REPRESENTATIVE ACTION
     NESTLÉ USA, INC.,                         COMPLAINT FOR EQUITABLE
19                                             AND INJUNCTIVE RELIEF**
                 Defendant.
20
                                               **JURY TRIAL DEMANDED**
21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

Plaintiff, through her undersigned attorneys, brings this lawsuit against Defendant Nestlé USA, Inc. ("Defendant" or "Nestlé") as to her own acts upon personal knowledge and as to all other matters upon information and belief.

**DEFINITIONS**

1.      "Class Period" is May 4, 2008 to the present.

2.      "Eskimo Pie" is Nestlé Eskimo Pie Dark Chocolate bars.  A picture of the Eskimo Pie purchased by Plaintiff is attached as Exhibit 1 and specific descriptions of the relevant label representations are included below.

**SUMMARY OF THE CASE**

3.      Plaintiff's case has two distinct facets.  First, the "misbranding" part.  This case seeks to recover for the injuries suffered by the Plaintiff and the class as a direct result of the Defendant's unlawful sale of misbranded food products. Defendant packaged and labeled its Eskimo Pie in violation of California's Sherman Law which adopts, incorporates, and is, in all relevant aspects, identical to the federal Food Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA") and the regulations adopted pursuant to that act.  These violations render Defendant's food products "misbranded."  Defendant's actions violate the unlawful prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL") and the Consumers Legal Remedies Act, Cal. Civ. Code §1750 ("CLRA").

4.      Under California law, misbranded food products cannot be legally sold or possessed, have no economic value and are legally worthless.  Indeed, the sale or possession of misbranded food products is a criminal act in California.

5.      By selling such illegal products to the unsuspecting Plaintiff, the Defendant profited at the Plaintiff's expense and unlawfully deprived Plaintiff of the money she paid to purchase food products that were illegal to sell, possess or resell and had no economic value.

6.      The unlawful sale of a misbranded product that was illegal to sell or possess gives rise to causes of action under the UCL and CLRA.  In the present case, Plaintiff was injured by

the Defendant's illegal sale of its misbranded Eskimo Pie. Plaintiff paid money to purchase illegal products that were worthless and could not be legally sold or possessed.

7.     Plaintiff was unwittingly placed in a worse legal situation as a result of Defendant's unlawful sale of illegal products to them. Plaintiff would not have purchased Defendant's Eskimo Pie had she known that the product was illegal and could not be lawfully possessed. No reasonable consumer would purchase such a product. The class suffered the same injuries as Plaintiff due to the class' purchase of Eskimo Pie.

8.     Defendant has violated the Sherman Law § 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold or offer for sale any food that is misbranded. As discussed below, the illegal sale of a misbranded product to a consumer results in an independent violation of the unlawful prong of the UCL and CLRA that is separate and apart from the underlying unlawful labeling practice that resulted in the product being misbranded.  Plaintiffs reasonably relied on the fact that the Defendant's Eskimo Pie was legal to sell and possess and that Defendants' labeling and label claims were legal.

9.     Due to Defendant's misbranding and sale of Eskimo Pie and Plaintiff's reliance on the Defendants' labels, Plaintiff lost money by purchasing unlawful products.

10.     Second, the "misleading" part. In addition to being misbranded under the Sherman Law, Eskimo Pie has label statements that are misleading, deceptive and fraudulent.  The label statement is "*No Sugar Added.*"

11.     Prior to purchase, Plaintiff reviewed the illegal "No Sugar Added" statement on the labels of Eskimo Pie she purchased, reasonably relied, in substantial part, on this misleading statement, and was thereby misled in deciding to buy Eskimo Pie.  Plaintiff was deceived into purchasing Eskimo Pie in substantial part because of these label statements and because of these statements believed that Eskimo Pie was healthier than other similar products and/or healthier than Eskimo Pie without the statement.

12.     Defendant also misled Plaintiff to believe that Eskimo Pie was legal to purchase and possess. Had Plaintiff known that Eskimo Pie was misbranded she would not have bought

Defendant's Eskimo Pie. Plaintiffs relied (a) on the Defendant's explicit representations that its product had "No Sugar Added" and was thus healthier than other similar products lacking such statements and/or Eskimo Pie without such a statement, and (b) the Defendant's implicit representation based on Defendant's material omission of material facts that Eskimo Pie was legal to sell and possess.

13.     Reasonable consumers would be, and were, misled in the same manner as Plaintiffs.

14.     Defendant had a duty to disclose the illegality of its misbranded products because (a) it had exclusive knowledge of material facts not known or reasonably accessible to the Plaintiffs; and (b) the Defendant actively concealed a material fact from the Plaintiff. The Defendant had a duty to disclose the information required by the labeling laws discussed herein because of the disclosure requirements contained in those laws and because in making its "No Sugar Added" claim made partial representations that are misleading because other material facts have not been disclosed.

## PARTIES, JURISDICTION AND VENUE

15.     Plaintiff is a resident of San Jose, California who purchased Defendant's Eskimo Pie during the Class Period.   Copies of the label purchased by Plaintiff are attached as Exhibit 1.

16.     Defendant Nestlé USA, Inc. is a privately held Delaware corporation with its corporate headquarters and principal place of business in Glendale, California.

17.     Defendant is a leading producer of retail food products, including Eskimo Pie. It sells its food products to consumers through grocery and other retail stores throughout California and the United States.

18.     California law applies to all claims set forth in this complaint because Nestlé is a California resident and all of the misconduct alleged herein was contrived in, implemented in, and has a shared nexus with California.  The formulation and execution of the unlawful and misleading practices alleged herein, occurred in, or emanated from California.  Accordingly,

California has significant contacts and/or a significant aggregation of contacts with the claims asserted by Plaintiff and all class members.

19.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which:  (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

20.     This Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is between citizens of different states.

21.     This Court has personal jurisdiction over Defendant because: (i) a substantial portion of the wrongdoing alleged in this Complaint occurred in California, (ii) Defendant is authorized to do business in California, (iii) Defendant has sufficient minimum contacts with California, and (iv) Defendant otherwise intentionally availed itself of the markets in California through the promotion, marketing and sale of merchandise, sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

22.     Because a substantial part of the events or omissions giving rise to these claims occurred in this district and because this Court has personal jurisdiction over Defendant, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

**BACKGROUND**

**A.     <u>Identical California and Federal Law Regulate Food Labeling</u>**

23.     Food manufacturers are required to comply with identical state and federal laws and regulations that govern the labeling of food products.  First and foremost among these is the FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

24.     Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements as its own and indicated that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state."  California Health &

Safety Code § 110100.

25. Under both the Sherman Law and FDCA Section 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain certain information on its label or its labeling. Cal. Health & Safety Law §§ 110660, 110705; 21 U.S.C. § 343.

26. In addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations.  As described herein, Defendant has violated the following Sherman Law sections:  California Health & Safety Code § 110390 (unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product); California Health & Safety Code § 110395 (unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food); California Health & Safety Code §§ 110398 and 110400 (unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely advertised); California Health & Safety Code § 110660 (misbranded if label is false and misleading); California Health & Safety Code § 110665 (misbranded if label fails to conform to the requirements set forth in 21 U.S.C. § 343(q)); California Health & Safety Code § 110670 (misbranded if label fails to conform with the requirements of 21 U.S.C. § 343(r)); California Health & Safety Code § 110705 (misbranded if words, statements and other information required by the Sherman Law are either missing or not sufficiently conspicuous); California Health & Safety Code § 110765 (which makes it unlawful for any person to misbrand any food); California Health & Safety Code § 110770 (unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food).

27. Plaintiff's claims are brought for violation of the Sherman Law.

### B.     FDA Enforcement History

28. In recent years the FDA has become increasingly concerned that food manufacturers have been disregarding food labeling regulations. To address this concern, the FDA elected to take steps.  In October 2009, the FDA issued a *Guidance for Industry: Letter*

*regarding Point Of Purchase Food Labeling* and on March 3, 2010 the FDA issued "*Open Letter to Industry from [FDA Commissioner] Dr. Hamburg*" to inform the food industry of its concerns and to place the industry on notice that food labeling compliance was an area of enforcement priority. Additionally, the FDA has sent warning letters to the industry, including many of Defendant's peer food manufacturers as well as a December 4, 2009 Warning Letter to Nestle, Inc., for some of the same types of misbranded labels and deceptive labeling claims described herein.

29. Defendant did see, or should have seen, these warnings. Defendant did not change its labels in response to any warning letters.

## SHERMAN LAW VIOLATIONS AND ESKIMO PIE

### A. Eskimo Pie is Misbranded Under the Sherman Law

30. The label on the package of Eskimo Pie violates the Sherman Law and is therefore misbranded. Defendant sold Eskimo Pie to Plaintiff and the class.

31. The label on the package of Eskimo Pie purchased by Plaintiff states "No Sugar Added." All packages of Eskimo Pie sold in the Class Period have the same "No Sugar Added" statement.

32. "No Sugar Added" is a nutrient content claim.

33. 21 C.F.R. § 101.60 contains special requirements for nutrient claims that use the phrase "no sugar added." 21 C.F.R. § 101.60 has been adopted and expressly incorporated by the Sherman Law, California Health & Safety Code § 110100, and provides in 101.60(c)(2) that:

> (2) The terms "no added sugar," "without added sugar," or "*no sugar added*" may be used only if:
>
> (i) No amount of sugars, as defined in § 101.9(c)(6)(ii), or any other ingredient that contains sugars that functionally substitute for added sugars is added during processing or packaging; and
>
> (ii) The product does not contain an ingredient containing added sugars such as jam, jelly, or concentrated fruit juice; and
>
> (iii) The sugars content has not been increased above the amount present in the ingredients by some means such as the use of enzymes, except where the intended functional effect of the process is not to increase the sugars content of a food, and a functionally insignificant increase in sugars results; and

(iv) The food that it resembles and for which it substitutes normally contains added sugars; and

(v) ***The product bears a statement that the food is not "low calorie" or "calorie reduced"*** (unless the food meets the requirements for a "low" or "reduced calorie" food) ***and that directs consumer's attention to the nutrition panel for further information on sugar and calorie content***.

34.      21 C.F.R. § 101.60(b)(2) provides that:

The terms "low-calorie," "few calories," "contains a small amount of calories," "low source of calories," or "low in calories" may be used on the label or in labeling of foods, except meal products as defined in § 101.13(l) and main dish products as defined in § 101.13(m), provided that: (i)(A) The food has a reference amount customarily consumed greater than 30 grams (g) or greater than 2 tablespoons and does not provide more than 40 calories per reference amount customarily consumed; or (B) The food has a reference amount customarily consumed of 30 g or less or 2 tablespoons or less and does not provide more than 40 calories per reference amount customarily consumed and, except for sugar substitutes, per 50 g ….(ii) If a food meets these conditions without the benefit of special processing, alteration, formulation, or reformulation to vary the caloric content, it is labeled to clearly refer to all foods of its type and not merely to the particular brand to which the label attaches (e.g., "celery, a low-calorie food").

35.      The labels for Defendant's Eskimo Pie have "no sugar added" on the front panel, so under 21 C.F.R. § 101.60(c)(2), there must be an additional two statements on the label:  (1) a statement that the product is not "low calorie" or "calorie reduced" (unless the exception applies) and (2) a statement that directs consumer's attention to the nutrition panels for further information on sugar and calorie content.

36.      There is no statement that directs consumer's attention to the nutrition panels for further information on sugar and calorie content on the label of Defendant's Eskimo Pie.  For this reason, Eskimo Pie does not satisfy element (v) of 21 C.F.R. § 101.60(c)(2) and is misbranded.

37.      There is also no statement that the product is not "low calorie" or "calorie reduced" on the label of Defendant's Eskimo Pie.  This product does not meet the requirements for a "low" or "reduced calorie" food under California and federal law so the exception within the first requirement of 21 C.F.R. § 101.60(c)(2) does not apply.  The label must therefore bear such a statement. For this reason, Defendant's Eskimo Pie does not satisfy element (v) of 21 C.F.R. § 101.60(c)(2) and is therefore misbranded.

38.      Eskimo Pie is not "low calorie" as defined in 21 C.F.R. § 101.60(b)(2).  The label

states that this product has a serving size of 50 grams per bar.  Each serving has 150 calories.
This exceeds the 40 calorie limit imposed by 21 C.F.R. § 101.60(b)(2) for a product to be
considered "low calorie."

39.     Eskimo Pie is not "reduced calorie" as defined in 21 C.F.R. § 101.60(b)(4)(i) and
21 C.F.R. § 101.13(j)(1)(ii) because it does not contain at least 25% fewer calories than an
appropriate "market basket" reference product.

40.     Eskimo Pie is 50 grams per serving size with 150 calories per bar.  To be "reduced
calorie" the amount of calories per serving is determined, however, based on a reference amount
customarily consumed of 85 grams.  Eskimo Pie is therefore not 150 calories per bar for these
purposes, but really 255 calories per bar.  For Eskimo Pie to be 25% less calories than an
appropriate market based reference product such a similar product must have at least 340 calories.
Most, if not all, such similar products have fewer than 340 calories.  For example, the Haagen-
Dazs Vanilla Milk Chocolate ice cream bars have a serving size of 280 calories per 83 grams.  If
this was the reference product, Eskimo Pie would have to be 210 calories per reference amount
customarily consumed to label itself "reduced calorie." Because it made a no sugar added claim,
Defendant was also required by 21 C.F.R. § 105.66 to place a conspicuous labeling statement on
the package of Eskimo Pie bars to  inform consumers that the product contained both nutritive
and non-nutritive sweeteners to alert consumers of the fact that the product contained calorific
sweeteners.

41.      Defendant's violations of the Sherman Law include Defendant's illegal labeling
practices which misbrand Eskimo Pie as well as the illegal advertising, marketing, distribution,
delivery and sale of Defendant's misbranded Eskimo Pie to consumers in California and
throughout the United States.

42.     Defendant could have easily complied with the labeling regulations by simply
adding two statements on the label:  (1) a statement that the product is not "low calorie" or
"calorie reduced" (because the exception does not apply) and (2) a statement that directs
consumer's attention to the nutrition panels for further information on sugar and calorie content.

43.     As a result, consumers, including Plaintiff and the class, bought products that fail to comply with the mandatory labeling requirements and standards established by law such that the products are misbranded and rendered unfit for sale.

44.     Plaintiff and the class have been damaged by Defendant's illegal conduct in that she purchased misbranded and worthless products that were illegal to sell or possess based on Defendant's illegal labeling of the products and otherwise lost money.

45.     Plaintiff reasonably relied on the omission of fact/misrepresentation that Defendant's Eskimo Pie was not misbranded under the Sherman Law and were therefore legal to buy and possess. Plaintiff would not have purchased Eskimo Pie had she known she were illegal to purchase and possess.

46.     Because of the violations of 21 C.F.R. § 101.60 and Sherman Law § 110100, Defendant's products are misbranded under Sherman Law § 110660, Sherman Law § 110670 and Sherman Law § 110705. Defendant's act of selling a misbranded product violates Sherman Law § 110760 which prohibits the sale or possession of misbranded products.

47.     Defendant's sale of misbranded Eskimo Pie results in an independent violation of the unlawful prong that is separate from the labeling violation. Plaintiff has two distinct claims under the unlawful prong. The first arises from Defendant's unlawful "No Sugar Added" label statement on its Eskimo Pie. The second is when Plaintiff relied on these claims to her detriment when purchasing Defendant's Eskimo Pie.  Plaintiff was injured and has a claim arising from the purchase of a product in reliance on the illegal "No Sugar Added" labeling claim made by Defendant.  Plaintiff has been deprived of money in an illegal sale and given a worthless illegal product in return. In addition, due to the law's prohibition of possession of such a product, Plaintiff has been unwittingly placed by the Defendant's conduct in a legal position that no reasonable consumer would agree to be placed.

**B.     The "No Sugar Added" Label Statement on Eskimo Pie Is Misleading and Deceptive**

48.     Plaintiff read and relied upon Defendant's front of package "No Sugar Added" label statement on Eskimo Pie and Plaintiff was thus deceived.

49.     21 C.F.R. § 101.60(c)(1) states that "consumers may **reasonably be expected** to regard terms that represent that the food contains no sugars or sweeteners e.g., 'sugar free,' or 'no sugar,' as indicating a product which is low in calories or significantly reduced in calories." (emphasis added).

50.     Because consumers may reasonably be expected to regard terms that represent that the food contains "no sugar added" or sweeteners as indicating a product which is in fact low in calories or significantly reduced in calories, consumers are misled when foods that are not low-calorie as a matter of law are falsely represented, through the use of phrases like "no sugar added" that she are not allowed to bear due to its high calorific levels and absence of mandated disclaimer or disclosure statements.

51.     Eskimo Pie is not low calorie or significantly reduced in calories.

52.     Defendant's conduct misled Plaintiff because, with Defendant failing to include the required disclosure that Eskimo Pie is not "low calorie" or "calorie reduced," Plaintiff was misled into believing Defendant's Eskimo Pie to be a healthier choice than other similar products and/or Eskimo Pie without such a statement. Plaintiff is conscious of the healthiness of the products she purchases, and Defendant's omitted information deprived Plaintiff of her ability to take into account those foods' contributions, or not, to Plaintiff's total dietary composition.

53.     Plaintiff reasonably relied on the "No Sugar Added" label representation when making her purchase decision and was misled by the "No Sugar Added" representation as described herein. Plaintiff was also misled by the defendant's failure to conspicuously disclose the fact that its product contained nutritive sweeteners as required by law.

54.     Plaintiff would not have purchased Eskimo Pie had she known the truth about this product, *i.e.*, that it was not as healthy as described.  Plaintiff had other food alternatives that satisfied such standards and Plaintiff also had cheaper alternatives.  Reasonable consumers would have been misled in the same identical manner as Plaintiff.

55.     Plaintiff was misled to believe that Eskimo Pie was healthier that other similar products and/or Eskimo Pie without such a statemen, and, as a result, she purchased Eskimo Pie.

Plaintiff was misled and deceived through the very means and methods the FDA sought to regulate.

56.     Plaintiff and the class would not have purchased Eskimo Pie had she not been misled by Defendant's "No Sugar Added" claim.

## PLAINTIFF AND ESKIMO PIE

57.     Plaintiff cares about the nutritional content of food and seeks to maintain a healthy diet.

58.     During the Class Period, Plaintiff spent more than $25.00 on Eskimo Pie.

59.     Plaintiff read and reasonably relied on the labels as described herein when buying Eskimo Pie.  Plaintiff relied on Defendant's labeling and based and justified the decision to purchase Defendant's products, in substantial part, on these labels.

60.     At point of sale, Plaintiff did not know, and had no reason to know, the truth about Eskimo Pie as described herein, and the fact Eskimo Pie was misbranded as set forth herein. Plaintiff would not have bought the products had she known the truth about them.

61.     After Plaintiff learned that Defendant's Eskimo Pie was falsely labeled, Plaintiff stopped purchasing them.

62.     As a result of Defendant's actions, Plaintiff and thousands of others in California and throughout the United States purchased Eskimo Pie.

63.     Defendant's labeling as alleged herein is false and misleading and was designed to increase sales of the products at issue.  Defendant's misrepresentations are part of its systematic labeling practice and a reasonable person would attach importance to Defendant's misrepresentations in determining whether to buy Eskimo Pie.

64.     A reasonable person would also attach importance to whether Defendant's products were "misbranded," *i.e.*, legally salable, and capable of legal possession, and to Defendant's representations about these issues in determining whether to purchase the products at issue. Plaintiff would not have purchased Defendant's products had she known she were not capable of being legally sold or held.

65.     Plaintiff had cheaper alternatives available and paid an unwarranted premium for Eskimo Pie.

## DEFENDANT HAS VIOLATED CALIFORNIA LAW

66.     Defendant has violated California Health & Safety Code § 110390 which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product.

67.     Defendant has violated California Health & Safety Code § 110395 which makes it unlawful to manufacture, sell, deliver, hold, sell or offer to sell any falsely advertised food.

68.     Defendant has violated California Health & Safety Code §§ 110398 and 110400 which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely advertised.

69.     Defendant has violated California Health & Safety Code § 110660 because its labeling is false and misleading in one or more ways, as follows:

a.      Defendant's Eskimo Pie is misbranded under California Health & Safety Code § 110665 because its labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and the regulations adopted thereto;

b.      Defendant's Eskimo Pie is misbranded under California Health & Safety Code § 110670 because its labeling fails to conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and the regulations adopted thereto; and

c.      Defendant's Eskimo Pie is misbranded under California Health & Safety Code § 110705 because words, statements and other information required by the Sherman Law to appear on its labeling either are missing or not sufficiently conspicuous.

70.     Defendant has violated California Health & Safety Code § 110760 which makes it unlawful for any person to manufacture, advertise, distribute, hold, sell or offer for sale, any food that is misbranded.

71.     Defendant has violated California Health & Safety Code § 110765 which makes it unlawful for any person to misbrand any food.

72.     Defendant has violated California Health & Safety Code § 110770 which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for deliver any such food.

## CLASS ACTION ALLEGATIONS

73.     Plaintiff brings this action as a class action pursuant to Federal Rule of Procedure 23(b)(2) and 23(b)(3) on behalf of the following "class:"

> All persons in the United States since May 4, 2008 who purchased Eskimo Pie Dark Chocolate with labels that state "No Sugar Added."

74.     The following persons are expressly excluded from the class:  (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

75.     This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

76.     Numerosity:  Based upon Defendant's publicly available sales data with respect to the misbranded products at issue, it is estimated that the class numbers in the thousands and that joinder of all class members is impracticable.

77.     Common Questions Predominate:  This action involves common questions of law and fact applicable to each class member that predominate over questions that affect only individual class members.  Thus, proof of a common set of facts will establish the right of each class member to recover.  Questions of law and fact common to each class member include, just for example:

      a.     Whether the Eskimo Pie is misbranded under the Sherman Law;

      b.     Whether Defendants violated the Sherman Law;

      c.     Whether Defendant made unlawful and/or misleading claims with respect to its Eskimo Pie sold to consumers;

d.  Whether Defendant engaged in unlawful and misleading, unfair or deceptive business practices by failing to properly package and label its Eskimo Pie sold to consumers;

e.  Whether Defendant violated California Bus. & Prof. Code § 17200 *et seq.*, California Bus. & Prof. Code § 17500 *et seq.*, the Consumers Legal Remedies Act, Cal. Civ. Code §1750 *et seq.*, and the Sherman Law;

f.  Whether Plaintiff and the class are entitled to equitable and/or injunctive relief; and

g.  Whether Defendant's unlawful and misleading, unfair and/or deceptive practices harmed Plaintiff and the class.

78.  Typicality:  Plaintiff's claims are typical of the claims of the class because Plaintiff bought Defendant's Eskimo Pie during the Class Period.  Defendant's unlawful, misleading, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where she occurred or were experienced.  Plaintiff and the class sustained similar injuries arising out of Defendant's conduct in violation of California law.  The injuries of each member of the class were caused directly by Defendant's wrongful conduct.  In addition, the factual underpinning of Defendant's misconduct is common to all class members and represents a common thread of misconduct resulting in injury to all members of the class.  Plaintiff claims arise from the same practices and course of conduct that give rise to the claims of the class members and are based on the same legal theories.

79.  Adequacy:  Plaintiff will fairly and adequately protect the interests of the class. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the class members.  Plaintiff has retained highly competent and experienced class action attorneys to represent her interests and those of the members of the class.  Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of her fiduciary responsibilities to the class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the class.

80.  Superiority:  There is no plain, speedy or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of the class

will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of class members' rights and the disposition of its interests through actions to which she were not parties.  Class action treatment will permit a large number of similarly situated persons to prosecute her common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Further, as the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.  Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

81.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or equitable relief with respect to the class as a whole.

82.     The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

83.     Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Business and Professions Code § 17200 *et seq*. - Unlawful Business Acts and Practices**

84.     Plaintiff incorporates by reference each allegation set forth above.

85.     Defendant's conduct constitutes unlawful business acts and practices.

86.     Defendant sold Eskimo Pie in California and the United States during the Class Period.

87.     Defendant is a corporation and, therefore, is a "person" within the meaning of the Sherman Law.

88.     Defendant's business practices are unlawful under § 17200 *et seq.* by virtue of Defendant's violations of the advertising provisions of Article 3 of the Sherman Law and the misbranded food provisions of Article 6 of the Sherman Law.

89.     Defendant's business practices are unlawful under § 17200 *et seq.* by virtue of Defendant's violations of § 17500 *et seq.*, which forbids untrue and misleading advertising.

90.     Defendant's business practices are unlawful under § 17200 *et seq.* by virtue of Defendant's violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*

91.     Defendant sold Plaintiff and the class Eskimo Pie that were not capable of being sold or held legally and which were legally worthless.

92.     As a result of Defendant's illegal business practices, Plaintiff and the class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any class member any money paid for Eskimo Pie.

93.     Defendant's unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiff and the class. Plaintiff and the class paid a premium price for Eskimo Pie.

94.     As a result of Defendant's conduct, Plaintiff and the class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Eskimo Pie by Plaintiff and the class.

**SECOND CAUSE OF ACTION**

**Business and Professions Code § 17200 *et seq*. - Unfair Business Acts and Practices**

95.     Plaintiff incorporates by reference each allegation set forth above.

96.     Defendant's conduct as set forth herein constitutes unfair business acts and practices.

97.     Defendant sold Eskimo Pie in California and the United States during the Class Period.

98.     Plaintiff and members of the class suffered a substantial injury by virtue of buying Defendant's Eskimo Pie that she would not have purchased absent Defendant's illegal conduct.

99.     Defendant's deceptive marketing, advertising, packaging and labeling of its Eskimo Pie and its sale of unsalable misbranded products that were illegal to possess was of no benefit to consumers, and the harm to consumers and competition is substantial.

100.     Defendant sold Plaintiff and the Eskimo Pie that were not capable of being legally sold or held and that were legally worthless.

101.     Plaintiff and the class who purchased Defendant's Eskimo Pie had no way of reasonably knowing that the products were misbranded and were not properly  marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

102.     The consequences of Defendant's conduct as set forth herein outweigh any justification, motive or reason therefore.  Defendant's conduct is and continues to be immoral, unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiff and the class.  Plaintiff and the class paid a premium price for Eskimo Pie.

103.     As a result of Defendant's conduct, Plaintiff and the class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Eskimo Pie by Plaintiff and the class.

**THIRD CAUSE OF ACTION**

**Business and Professions Code § 17200 *et seq*. - Fraudulent Business Acts and Practices**

104.   Plaintiff incorporates by reference each allegation set forth above.

105.   Defendant's conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code sections § 17200 *et seq.*

106.   Defendant sold Eskimo Pie in California and the United States during the Class Period.

107.   Defendant's misleading marketing, advertising, packaging and labeling of Eskimo Pie and misrepresentation that the products were salable, capable of possession and not misbranded were likely to deceive reasonable consumers, and in fact, Plaintiff and members of the class were deceived.  Defendant has engaged in fraudulent business acts and practices.

108.   Defendant's fraud and deception caused Plaintiff and the class to purchase Defendant's Eskimo Pie that she would otherwise not have purchased had she known the true nature of those products.

109.   Defendant sold Plaintiff and the class Eskimo Pie that were not capable of being sold or held legally and that were legally worthless.  Plaintiff and the class paid a premium price for the Eskimo Pie.

110.   As a result of Defendant's conduct as set forth herein, Plaintiff and the class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Eskimo Pie by Plaintiff and the class.

**FOURTH CAUSE OF ACTION**

**Business and Professions Code § 17500 *et seq*. - Misleading and Deceptive Advertising**

111.   Plaintiff incorporates by reference each allegation set forth above.

112.   Plaintiff asserts this cause of action for violations of California Business and Professions Code § 17500 *et seq.* for misleading and deceptive advertising against Defendant.

113.    Defendant sold Eskimo Pie in California and the United States during the Class Period.

114.    Defendant engaged in a scheme of offering Defendant's Eskimo Pie for sale to Plaintiff and members of the class by way of, *inter alia*, product packaging and labeling, and other promotional materials.  These materials misrepresented and/or omitted the true contents and nature of Defendant's Eskimo Pie.  Defendant's advertisements and inducements were made within California and come within the definition of advertising as contained in Business and Professions Code §17500 *et seq.* in that such product packaging and labeling, and promotional materials were intended as inducements to purchase Defendant's Eskimo Pie and are statements disseminated by Defendant to Plaintiff and the class that were intended to reach members of the class.  Defendant knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive as set forth herein.

115.    In furtherance of its plan and scheme, Defendant prepared and distributed within California and nationwide via product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represented the composition and the nature of Defendant's Eskimo Pie.  Plaintiff and the class necessarily and reasonably relied on Defendant's materials, and were the intended targets of such representations.

116.    Defendant's conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiff and the class was and is likely to deceive reasonable consumers by obfuscating the true composition and nature of Defendant's Eskimo Pie in violation of the "misleading prong" of California Business and Professions Code § 17500 *et seq.*

117.    As a result of Defendant's violations of the "misleading prong" of California Business and Professions Code § 17500 *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiff and the class.  Misbranded products cannot be legally sold or held and are legally worthless.  Plaintiff and the class paid a premium price for the Eskimo Pie.

118.    Plaintiff and the class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and

judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Eskimo Pie by Plaintiff and the class.

**FIFTH CAUSE OF ACTION**

**Business and Professions Code § 17500 *et seq*. - Untrue Advertising**

119.    Plaintiff incorporates by reference each allegation set forth above.

120.    Plaintiff asserts this cause of action against Defendant for violations of California Business and Professions Code § 17500 *et seq.*, regarding untrue advertising.

121.    Defendant sold Eskimo Pie in California and the United States during the Class Period.

122.    Defendant engaged in a scheme of offering Defendant's Eskimo Pie for sale to Plaintiff and the class by way of product packaging and labeling, and other promotional materials. These materials misrepresented and/or omitted the true contents and nature of Defendant's Eskimo Pie.  Defendant's advertisements and inducements were made in California and come within the definition of advertising as contained in Business and Professions Code §17500 *et seq.* in that the product packaging and labeling, and promotional materials were intended as inducements to purchase Defendant's Eskimo Pie, and are statements disseminated by Defendant to Plaintiff and the class.  Defendant knew, or in the exercise of reasonable care should have known, that these statements were untrue.

123.    In furtherance of its plan and scheme, Defendant prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the composition of Defendant's Eskimo Pie, and falsely misrepresented the nature of those products.  Plaintiff and the class were the intended targets of such representations and would reasonably be deceived by Defendant's materials.

124.    Defendant's conduct in disseminating untrue advertising throughout California deceived Plaintiff and members of the class by obfuscating the contents, nature and quality of Defendant's Eskimo Pie in violation of the "untrue prong" of California Business and Professions Code § 17500.

125.    As a result of Defendant's violations of the "untrue prong" of California Business and Professions Code § 17500 *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiff and the class.  Misbranded products cannot be legally sold or held and are legally worthless.  Plaintiff and the class paid a premium price for the Eskimo Pie.

126.    Plaintiff and the class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Eskimo Pie by Plaintiff and the class.

**SIXTH CAUSE OF ACTION**

**Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*.**

127.    Plaintiff incorporates by reference each allegation set forth above.

128.    This cause of action is brought pursuant to the CLRA. Defendant's violations of the CLRA were and are willful, oppressive and fraudulent, thus supporting an award of punitive damages.

129.    Plaintiff and the class are entitled to actual and punitive damages against Defendant for its violations of the CLRA. In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff and the class are entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiff and the class, ordering payment of costs and attorney's fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

130.    Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because she extend to transactions that are intended to result, or which have resulted, in the sale of goods or services to consumers.

131.    Defendant sold Eskimo Pie in California and in the United States during the Class Period.

132.    Plaintiff and members of the class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

133.    Defendant's Eskimo Pie were and are "goods" within the meaning of Cal. Civ.

Code §1761(a).

134.    By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(5), of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it misrepresents the particular ingredients, characteristics, uses, benefits and quantities of the goods.

135.    By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendant misrepresents the particular standard, quality or grade of the goods.

136.    By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendant advertises goods with the intent not to sell the goods as advertised.

137.    By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(16) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendant represents that a subject of a transaction has been supplied in accordance with a previous representation when she have not.

138.    Plaintiff requests that the Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2). If Defendant is not restrained from engaging in these practices in the future, Plaintiff and the class will continue to suffer harm.

139.    Pursuant to Section 1782(a) of the CLRA, on June 25, 2012, Plaintiff's counsel served Defendant with notice of Defendant's violations of the CLRA.  As authorized by Defendant's counsel, Plaintiff's counsel served Defendant by certified mail, return receipt requested. Defendant has not responded.

140.    Plaintiff makes certain claims in this complaint that were not included in the

original complaint filed on May 4, 2012, and were not included in Plaintiff CLRA demand notice.

141.    This cause of action does not currently seek monetary relief and is limited solely to injunctive relief, as to Defendant's violations of the CLRA not included in the original Complaint. Plaintiff intends to amend this to seek monetary relief in accordance with the CLRA after providing Defendant with notice of Plaintiff's new claims pursuant to Cal. Civ. Code § 1782.

142.    At the time of any amendment seeking damages under the CLRA, Plaintiff will demonstrate that the violations of the CLRA by Defendant were willful, oppressive and fraudulent, thus supporting an award of punitive damages.

143.    Consequently, Plaintiff and the class will be entitled to actual and punitive damages against Defendant for its violations of the CLRA. In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff and the class will be entitled to an order enjoining the above described acts and practices, providing restitution to Plaintiff and the class, ordering payment of costs and attorney's fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

### JURY DEMAND

Plaintiff hereby demands a trial by jury of her claims.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, and on behalf of the general public, prays for judgment against Defendant as follows:

A.    For an order certifying this case as a class action and appointing Plaintiff and her counsel to represent the class;

B.    For an order awarding, as appropriate, damages, restitution or disgorgement to Plaintiff and the class for all causes of action;

C.    For an order requiring Defendant to immediately cease and desist from selling its Eskimo Pie listed in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell these products in the unlawful manner described herein; and ordering

1  Defendant to engage in corrective action;

2        D.      For all equitable remedies available pursuant to Cal. Civ. Code § 1780;

3        E.      For an order awarding attorney's fees and costs;

4        F.      For an order awarding punitive damages;

5        G.      For an order awarding pre-and post-judgment interest; and

6        H.      For an order providing such further relief as this Court deems proper.

7        Dated:  January 17, 2014.

8                                           Respectfully submitted,

9

10                                           *Pierce Gore*
                                           Ben F. Pierce Gore (SBN 128515)
11                                           PRATT & ASSOCIATES
                                           1871 The Alameda, Suite 425
12                                           San Jose, CA 95126
                                           (408) 429-6506
13                                           pgore@prattattorneys.com

14                                           Charles Barrett
                                           CHARLES BARRETT, P.C.
15                                           6518 Hwy. 100, Suite 210
                                           Nashville, TN 37205
16                                           (615) 515-3393
                                           charles@cfbfirm.com

17

18

19

20

21

22

23

24

25

26

27

28